IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MARLON DONELSON, )<br>)<br>    Defendant. ) | Case No. 2:22-cr-20133-JTF-tmp |

ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Before the Court is the Magistrate Judge's Report and Recommendation on Defendant's Motion to Suppress ("R & R"), submitted December 16, 2022. (ECF No. 40.) Defendant Marlon Donelson filed a Motion to Suppress on September 27, 2022. (ECF No. 21.) The motion was referred to the Magistrate Judge on September 28, 2022. (ECF No. 25.) The Government responded to the motion on October 12, 2022. (ECF No. 26.) The Magistrate Judge held a hearing on the motion on November 3, 2022. (ECF No. 36.) After this hearing, the Magistrate Judge submitted the present R & R recommending that the Motion to Suppress be denied. Donelson filed objections to the R & R on January 9, 2023. (ECF No. 45.) For the following reasons, the R & R is **ADOPTED**, and the Motion to Suppress is **DENIED**.

I.   STANDARD OF REVIEW

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates." *United States v. Curtis*,

237 F.3d 598, 602 (6th Cir. 2001). Pursuant to the provision, magistrate judges may hear and determine any pretrial matter pending before the Court, except various dispositive motions. *See* 28 U.S.C. § 636(b)(1)(A). Upon hearing a pending matter, "the magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *see also Baker v. Peterson*, 67 F. App'x. 308, 310 (6th Cir. 2003). Any party who disagrees with a magistrate judge's proposed findings and recommendation may file written objections to the report and recommendation. Fed. R. Civ. P. 72(b)(2). A failure to file specific objections to a Magistrate Judge's report does not meet the requirement of filing an objection at all. *Howard v. Secretary of Health and Human Services,* 932 F.2d 505, 509 (6th Cir. 1991); *McCready v. Kamminga*, 113 Fed. App'x. 47, 49 (6th Cir. 2004). However, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee notes. The district court is not required to review, and indeed "should adopt[,] the findings and rulings of the Magistrate Judge to which no specific objection is filed." *Brown v. Bd. of Educ. of Shelby Cty. Sch.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

The standard of review that is applied by a district court when considering a magistrate judge's proposed findings and recommendations depends on the nature of the matter(s) considered by the magistrate judge. *See Baker*, 67 Fed. App'x at 310 (citations omitted) ("A district court normally applies a 'clearly erroneous or contrary to law' standard of review for non-dispositive preliminary measures. A district court must review dispositive motions under the *de novo* standard."). Where timely, specific objections are filed, the parts objected to are reviewed under a *de novo* standard. *Rugiero v. United States*, 330 F. Supp. 2d 900, 904 (E.D. Mich. 2004). Upon a review of the evidence, the district court may accept, reject, or modify the proposed findings or

recommendations of the magistrate judge. *Brown v. Board of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014); *see also* 28 U.S.C. § 636(b)(1). The court "may also receive further evidence or recommit the matter to the [m]agistrate [j]udge with instructions." *Moses v. Gardner*, No. 2:14-cv-2706-SHL-dkv, 2015 U.S. Dist. LEXIS 29701, at *3 (W.D. Tenn. Mar. 11, 2015). Again, a district judge should adopt the findings and rulings of the magistrate judge to which no specific objection under Fed. R. Civ. P. 72(b) is filed. *Brown*, 47 F. Supp. 3d at 674. An objection to a magistrate judge's report and recommendation that does nothing more than state a disagreement with the magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection, as required to preserve the right to appeal a subsequent order of the district court adopting the report. *J.A. v. Smith County School District*, 364 F. Supp. 3d 803, 811–12 (M.D. Tenn. 2019).

## II.  FINDINGS OF FACT

The R & R's Proposed Findings of Fact are an accurate representation of the facts and are hereby **ADOPTED** and are summarized in relevant part below. Donelson offers only two objections to the Findings of Fact, which seek to clarify rather than dispute. (ECF No. 45, 2-3.)

On May 11, 2022, at around 8:00 p.m., Memphis Police Department ("MPD") officers were "notified of a vehicle of interest via a Flock alert." (ECF No. 40, 2.) Flock alerts are part of an automated system designed to alert officers if a vehicle of interest passes by one of many license-plate scanning cameras arranged around the city. (*Id.*) This alert was specifically for a gray Nissan Maxima with Tennessee license plate number 29AR07, "traveling southbound through the intersection of Sycamore View and I-40." (*Id.*) The car was associated with Donald Moore, who had several outstanding felony warrants. (*Id.*) The Flock alert provided officers with Moore's drivers license photo. (*Id.*)

After receiving the alert, Officer J. Thompson noticed a Nissan of "the same make, model, color, and body style as the wanted vehicle" parked at the FairBridge Inn. (ECF No. 40, 3.) The FairBridge Inn is located at 6015 Macon Cove, which intersects Sycamore View immediately south of I-40 and is along the path of the vehicle that caused the Flock alert. (*Id.*) The Nissan Officer Thompson noticed was backed into a parking spot outside the Inn with four people in and around the car, including a man who Thompson believed was Moore in the driver's seat.[1] (*Id.*) Officers Bulak, Tremmel, and Franklin responded to Thompson's notice. (*Id.*)

Bulak blocked in the Nissan with his vehicle. (ECF No. 40, 4.) Tremmel noticed Marlon Donelson along with two other men and a woman standing outside the Nissan. Tremmel believed "Donelson resembled Moore in complexion, appearance, height, and weight." (*Id.*) Bulak and Tremmel exited their vehicle and approached, asking Donelson if he was Donald Moore. Donelson responded that he was not and provided his real name, but Tremmel told Donelson to stand beside the police car while they verified his identity before placing him in handcuffs. (*Id.*) At this point, Bulak and Tremmel separated slightly. Bulak went to the back of the Nissan to check its license plate, while Tremmel verified Donelson's identity and questioned Donelson about where he had gotten the car. (*Id.* at 5.) Once Tremmel had verified Donelson's identity, he took off Donelson's handcuffs. (*Id.*) Quickly following the removal of the handcuffs, Bulak approached Donelson, asking him if he was a convicted felon.[2] (*Id.* at 6.) This question was seemingly prompted by the

---

[1] Donelson objected to certain phrasing the Magistrate Judge used surrounding the alleged physical similarities between Moore and Donelson. He states that the Magistrate Judge drew an inference that Donelson resembled Moore's driver's license photo and affirmatively states that he does not believe the two resemble each other. (ECF No. 45, 3.) The Court does not agree that this inference is so explicit but credits Donelson's statement that he does not believe he resembles Donald Moore.

[2] One of Donelson's two objections is that the Magistrate Judge's Findings of Fact were "incomplete" due to not emphasizing that "Mr. Donelson was still in handcuffs when Officer Bulak alerted that there was a handgun in the Nissan" and that the handcuffs were only "completely off just a split second before Bulak asked Mr. Donelson if he

presence of a gun that Bulak observed in the passenger seat of the Nissan as he made his way back from checking the car's plates. (*Id.* at 5-6.) Bulak had previously yelled out that the car was a drive-out after checking the tags, but had received no response, and he also verbally identified that there was a gun in the passenger seat seven seconds before he asked Donelson about his prior convictions. (*Id.*)

Donelson responded to Bulak's question by stating that he had been convicted of a felony. (ECF No. 40, 6.) Tremmel then asked to see the title to the car, which Donelson provided. (*Id.*) After this, Bulak asked Donelson to sit in the back of the police car, at which point he was detained on suspicion of being a felon in possession of a firearm. (*Id.*) Ten minutes later, Donelson was told that he was being held due to the gun in the car. (*Id.* at 7.) Donelson said that the gun was not his but rather belonged to one of the men that had been around the car with him when the officers first approached. (*Id.*) Ultimately, Donelson was handcuffed again, searched, patted down, and placed back in the car for almost two hours. (*Id.*) Donelson was never given *Miranda* warnings during the interaction. (*Id.*)

Donelson was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 40, 8.) In the underlying Motion to Suppress, Donelson argued that the officers lacked reasonable suspicion to seize him and obtained incriminating statements in violation of *Miranda*. (*Id.*)

### III. CONCLUSIONS OF LAW

As stated above, a district judge should adopt the findings and rulings of the magistrate judge to which no specific objection under Fed. R. Civ. P. 72(b) is filed. *Brown*, 47 F. Supp. 3d at

---

was a convicted felon[.]" (ECF No. 45, 2.) Given the timestamped citations in the R & R, the time between the events could be intuited, but the Court re-emphasizes the timing of events here as well.

674. Donelson filed objections to essentially all of the Magistrate Judge's central findings. Each relevant finding and corresponding objection will be addressed in turn.

1. *The Constitutionality of the Terry Stop*

The Magistrate Judge found that the encounter between Donelson and MPD officers was a valid "investigative detention," or *Terry* stop. A *Terry* stop is constitutional if there is a proper basis for the stop and if the degree of intrusion caused by the stop is reasonably related in scope to the situation at hand. *United States v. Mays*, 643 F.3d 537, 541 (6th Cir. 2011). The proper basis for a *Terry* stop is "reasonable suspicion," or a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). The Magistrate Judge found that the MPD officers had reasonable suspicion to stop Donelson based on three main facts. First, the Magistrate Judge noted that "Donelson's Nissan was the same make, model, color, and body style as the Nissan reported by the Flock alert." (ECF No. 40, 11.) Second, the Magistrate Judge stated that "Donelson resembled the wanted individual's description in facial hair, haircut, height, and complexion." (*Id.*) Third and finally, the Magistrate Judge considered that Donelson's "Nissan was found within the immediate vicinity of the camera that had issued the Flock alert." (*Id.*) Donelson objected to all of these findings and argues that "Mr. Donelson was simply a black man in a gray Nissan Maxima, which does not support a particularized and objective basis for suspecting Mr. Donelson of criminal activity." (ECF No. 45, 3-4.)

The Court agrees with the Magistrate Judge, and hereby **ADOPTS** this finding. The MPD officers had reasonable suspicion given that the car was the same make, model, and color of the car called in by the Flock alert, immediately within the area of the alert, and in the presence of a man who at least superficially resembled Donald Moore. Even without the physical resemblance,

courts have found similar evidence to justify reasonable suspicion, as the Magistrate Judge noted. (ECF No. 40, 12) (citing *United States v. Long*, 464 F.3d 569, 571, 575 (6th Cir. 2006); *United States v. Babb*, 77 F. App'x 761, 767 (6th Cir. 2003); *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000)). The Court does not find Donelson's attempt to factually distinguish these cases persuasive. For example, Donelson states that *Long* involved police searching for a black Ford Ranger with items in the truck bed that had been seen leaving the scene of a robbery in a particular direction, which was then flagged down and stopped by officers. (ECF No. 45, 4.) The Court does not find these details any more specific than a gray Nissan of the same make and model that had been seen on a Flock alert camera being approached in the immediate vicinity of that alert; indeed the only additional detail is that nondescript "stuff" was in the bed of the truck. *Long*, 464 F.3d at 571. The Magistrate Judge also cited *United States v. Babb*, which found reasonable suspicion based on a description of a black man of a specific age and size in a silver or gray Oldsmobile Alero with Michigan license plates. 77 F. App'x at 767. Donelson argues the case is applicable since he does not resemble Moore at all, but even if the Court accepted this, the gray Nissan here was also within the immediate area of a Flock alert for an identical vehicle, a detail not contained in *Babb* that makes the case for reasonable suspicion even stronger here. Finally, the Magistrate Judge cited *United States v. Hurst*, which Donelson states only provided probable cause because the front grill of the relevant vehicle was noted as missing. 228 F.3d at 757. However, nothing about *Hurst* suggests the front grill was an outcome-determinative factor, and the multiple reports even disagreed about the number of people in the relevant car and did not contain the car's make and model. Indeed, the two cars at issue in *Hurst* were not even the same model, but merely resembled each other. *Id.* at 757 n.2. Given the totality of the circumstances here, the Court agrees with the Magistrate Judge that the Flock alert, exact matching car, proximity to the relevant area,

and elements of the physical description of Moore provided the officers with reasonable suspicion to support a *Terry* stop of Donelson and his vehicle.

The Magistrate Judge also found that the degree of intrusion was reasonably related in scope to the situation at hand. The Magistrate Judge noted that the use of handcuffs was justified given that officers were searching for a suspect with multiple felony warrants, and that the cuffs were immediately removed upon verification of Donelson's identity, a process that took less than three minutes. (ECF No. 40, 13-14.) Donelson's main objection at the hearing and now is that the officers "far exceeded the scope of the *Terry* stop by continuing to question Mr. Donelson and search his vehicle after they had determined that he was not the suspect, and that the tags on his vehicles did not match the suspect vehicle." (ECF No. 45, 6.)

The Court agrees with the Magistrate Judge. Donelson's objection is based on an impossibly granular view of when the encounter could end. Complicating matters is the fact that multiple officers were pursing different lines of inquiry. Officer Tremmel, who had handcuffed and was closest to Donelson, pursued questions regarding Donelson's identity, eventually confirming that he was not Donald Moore. At the same time, Officer Bulak was checking the plates on the car, unaware of the identity verification, ultimately determining that the plates were drive out tags. It was on his way back to Tremmel and Donelson that Officer Bulak observed and informed Officer Tremmel that a gun was in the passenger seat. By this time, the handcuffs had been removed from Donelson for nearly a minute and a half. Bulak then immediately asked Donelson if he was a convicted felon.  (ECF No. 39, 47-9.)  As the government pointed out at the hearing, the officers could not "just automatically dissipate," especially here, where two separate officers resolved independent ends of the investigation simultaneously, but without each other's knowledge. (ECF No. 39, 71.) Thus, Bulak's question regarding Donelson's criminal history,

which is what Donelson argues unnecessarily prolonged the encounter, came before all officers at the scene were aware that Donelson was not Donald Moore and that the Nissan was not the vehicle that caused the Flock alert. The encounter was ongoing at this point, and certainly not unlawfully prolonged. After review of the record, the Court does not believe that the encounter was unnecessarily prolonged. Accordingly, Donelson's objection is **OVERRULED** and the Magistrate Judge's finding is **ADOPTED**.

2. *The Plain View of the Firearm*

Donelson's next set of objections stem from the plain view exception to the warrant requirement. As he notes, the plain view exception allows police to seize certain evidence without a warrant where four factors are satisfied: "(1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object." (ECF No. 45, 9) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). Donelson says that none of these factors were satisfied and that the officer's seizure of the firearm was unconstitutional. The Magistrate Judge found that the plain view exception applied and allowed the officers to seize the firearm.

The Court agrees with the Magistrate Judge and will address Donelson's objections in turn. First, Donelson states that the firearm was "inside the vehicle, which had tinted windows[,]" precluding the possibility that it was in plain view. This assertion is disproven by the events themselves: there is no accusation that Officer Bulak illegally entered the car or searched it before noticing the firearm. Instead, he looked in the window with his flashlight and saw the gun, in plain view, on the front passenger seat. As the Magistrate Judge noted, the Sixth Circuit has stated that the use of a flashlight to look inside a vehicle "does not implicate the Fourth Amendment." (ECF

No. 40, 15) (quoting *United States v. Galaviz,* 645 F.3d 347, 355 (6th Cir. 2011)). Second, Donelson argues that Officer Bulak was not legally present by the car since the police were illegally prolonging the stop without reasonable suspicion. This assertion fails given the finding in the previous section. Third, Donelson argues that the firearm was not immediately incriminating since "it is legal to openly carry a handgun without a permit in Memphis, Tennessee." However, since the gun was not seized until after the officers were told by Donelson that he was a convicted felon, this objection is more closely related to the propriety of asking Donelson about his criminal history and will be addressed below. (ECF No. 45, 9.) Finally, Donelson argues that the officers had no lawful right of access to the gun "because Mr. Donelson was interrogated while he was still in custody without the benefit of *Miranda* warnings," an objection again more closely related to the propriety of questioning Donelson and addressed below. Accordingly, Donelson's objections related solely to the plain view exception to the warrant requirement are **OVERRULED** and the Magistrate Judge's findings are **ADOPTED**. The gun was in plain view and Officer Bulak was legally present.

3. <u>The Lack of Miranda Warnings</u>

Donelson's last set of objections relate to the propriety of Officer Bulak's question regarding any prior felony convictions. He argues that the officers were required to give him *Miranda* warnings before asking him such a question. The Magistrate Judge correctly found that "the necessity of *Miranda* warnings [] turns on whether Donelson was subject to custodial interrogation when he was being questioned." (ECF No. 40, 17.) The Magistrate Judge found that he was not subject to custodial interrogation when Bulak asked him about his criminal history. Factors to consider in determining whether the existence of custodial interrogation include: "(1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was

any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." The Magistrate Judge found that three of the four factors weighed against a finding of custodial interrogation. (*Id.* at 18) (quoting *United States v. Luck*, 852 F.3d 615, 621 (6th Cir. 2017)). In full, the Magistrate Judge held:

> First, the questioning occurred beside the police vehicle at the FairBridge Inn, not inside the police vehicle or at the police station. Second, Donelson had only been questioned for about two minutes when he made the statement. Third, there was little restraint on his freedom of movement. While Donelson's Nissan was blocked in by the police car, he was no longer handcuffed, nor was his body physically restrained in any way. Fourth, the officers did not comment either way on whether Donelson needed to answer their questions. Together, these factors weigh against a finding of custodial interrogation.

(ECF No. 40, 18.) Donelson disagrees and says he was "seized" by a show of authority and that *Miranda* warnings were required as a result. (ECF No. 45, 11-12.)

Donelson's argument misses the central point. His objections state that "[i]t is indisputable that Mr. Donelson was seized and a seizure is an arrest." (*Id.* at 13) (citing *Torres v. Madrid*, 141 S. Ct. 989, 996 (2021)). Half of this is correct. No one disputes that Donelson was seized. But a seizure is not necessarily an arrest. *United States v. Prior*, 941 F.2d 427, 428 (6th Cir. 1991) (noting that a District Court "correctly characterized the temporary seizure of Prior as a '*Terry* stop' and not an arrest."); *see also Copeland v. Sadler*, Case No. 19-13404, 2021 WL 6124560, at *7 (E.D. Mich. Dec. 28, 2021) ("To determine the reasonableness of an arrest, a court must begin with the threshold question of when the arrest occurred, as not all seizures are arrests.") The question is not whether Donelson was seized, it is whether he was in custody for purposes of *Miranda*. As noted above, the Magistrate Judge considered the four factors in determining if "the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *United States v. Howard*, 815 F. App'x 69, 78-79 (6th Cir. 2020).

The Magistrate Judge found, and this Court agrees, that the pressures here were less than what *Miranda* requires to provide warnings. The questioning at issue is Officer Bulak asking Donelson if he had any prior felony convictions. Regarding location, the question was asked in a public parking lot with others around, not at a police station or similarly controlled environment. Time wise, the preceding questioning had only gone on for about two minutes. After becoming aware of the presence of a firearm, the resulting questioning was brief, basically one question. Donelson answered immediately. The Court does credit Donelson's assertion that there was some restraint on his freedom of movement. He was hemmed in by officers at the time and his car was blocked, even though his handcuffs had been removed. But the Magistrate Judge noted this light restraint and factored it into the final decision. (ECF No. 40, 18.) Finally, as for the fourth factor, although the officers did not comment about Donelson's requirement to answer the question, there is no indication in the record that the officers coerced or forced Donelson to answer. Donelson's objection asks the Court to find that the lesser level of physical restraint Donelson experienced while being asked about his criminal history was an outcome-determinative factor. The nature of the test, and facts at hand, cannot support that conclusion.

The Court thus **OVERRULES** Donelson's objection and **ADOPTS** the Magistrate Judge's findings. Accordingly, Donelson's objections related to the plain view exception not addressed above are **OVERRULED** as well. The incriminating nature of the firearm became apparent once Donelson affirmed that he had a prior felony conviction and had shown that the car was his. This, in turn, provided probable cause for a violation of 18 U.S.C. § 922(g)(1) and gave the officers lawful right of access to the firearm.

## IV. CONCLUSION

Accordingly, the Court adopts the Magistrate Judge's report and recommendation that Donelson's Motion to Suppress be **DENIED**.

**IT IS SO ORDERED** this 21st day of February, 2023.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
United States District Judge
